19-3122 United States v. Mobley. We will proceed with allowing counsel three minutes of uninterrupted time to begin. Again, you need not take that full time and you may invite questions, but otherwise it is your time. Please proceed. May it please the court, my name is Katrina Spearman for the appellant, Ms. Bogdana Mobley. There are four issues on appeal here today. The first is whether the trial court erred in denying Ms. Mobley's motion to recuse Judge Melgren when he participated in ex parte communications with Ms. Mobley's family and so clearly showed his prejudice against Ms. Mobley prior to sentencing. The second is whether there was sufficient evidence to support convictions on counts two and three of the superseding indictment. The third is whether the trial court erred in ordering Ms. Mobley to pay restitution because these expenses presented by Mr. Bryant Mobley were not the cost of childcare or transportation incurred as part of the investigation or criminal proceeding. And the fourth is whether the superseding indictment failed to state with specificity the communications against which Ms. Mobley was to defend herself. I would first like to address Judge Melgren's failure to recuse himself. Under 28 U.S.C. section 455A, any judge shall recuse himself in any proceeding in which his impartiality might reasonably be questioned. And under subsection B1, he shall also disqualify himself when he has personal bias or prejudice against concerning a party. Ms. Juliana Philipuk, Ms. Bogdana Mobley's mother, emailed Judge Melgren and asked if he received Bogdana's letter. Judge Melgren replied directly to Ms. Philipuk and in the most pertinent part stated, her attorneys have been told several times that sentencing will go very differently then depending on whether the children are in the U.S. or not. But I hope everyone realizes that once sentencing is pronounced on that date, there is no authority to change or modify a sentence later, even if positive developments occur thereafter. And we all know how common it is for defendants and their families to send letters to chambers. This is a reality of our practice. But what is not common is a judge responding directly to those communications and giving a condition upon which a sentence will be ordered. In every case I've worked on where a defendant has contacted chambers, two things have happened. Either the case manager or the court and deputy responds and copies counsel informing defendant that they must go through the attorneys or the letter is added under seal as part of the record and is sent to the attorneys with the request that they remind their client not to contact chambers directly, neither of which occurred in this case. The government seems to say in its brief that by sending letters to the court, Ms. Mobley invited the ex parte communication and therefore it's on her. However, this surely cannot be the case and cannot be the precedent to be set here today. If every time defendants sent letters to chambers, they were inviting error, we would have a madhouse of communications between judges and defendants. Canon two of the code of conduct for US judges states that a judge should ask at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary. Proposing a condition precedent upon which a defendant's sentence will be lessened, especially when that condition was not requested or invited by the initiator of the communication surely does not convey impartiality, nor does it promote public confidence in the integrity of this judge. In its brief, the government acknowledges that the district court's orders said that it was not an ex parte communication because it was procedural in nature. Now, had judge Melgrin's email merely stated, I received a letter sending me to set for May 20th. We wouldn't even be having this substantive portion as well, indicating that Ms. Mobley would receive a lesser sentence if the girl were returned to the US prior to sentencing. Let me interrupt now, Ms. Spearman. Was the statement actually that categorical? I mean, Judge Melgrin, let's assume for the moment so that we can cut to this issue. Let's assume for the moment that this was not just a procedural communication. The question, Phil, is whether there's anything about this communication that suggests bias against your client. And the first thing is, he didn't say you have to do this or I'll do this, did he? No, Your Honor, you're correct. He stated, and I'm quoting exactly from his email, her attorneys have been told several times that the sentencing will go very differently then depending on whether the children are back in the US or not. Okay, and in that regard, wasn't he in fact trying to do something to benefit your client by saying if you get the children back, it's more likely you'll get a lower sentence than if they're not back? Well, Your Honor, he had also previously denied Ms. Mobley's chance for free trial release on multiple occasions, making it significantly more difficult for her to get the children back from Russia. That's not answering the question. I mean, to the extent that we're focused on the substance of the communication, what we need to discern is how does it reflect adverse bias against your client? And if in fact the substance of the communication was designed to benefit her, and this is not a part, this has nothing to do with whether he lets her out, but if he's saying if the children are back, she's more likely to get a lenient sentence, is that your understanding of the substance of it? Isn't that what he said? My interpretation of the sentence, well, I understand how it could be taken that way. My interpretation is that he's stating that her sentence will be handled more severely if she's not back because he discusses the severity of the sentence in this and even states in a negative manner, he states, I hope everyone realizes that when sentencing is pronounced on that date, there is no authority to change or modify the sentence, even if positive developments occur thereafter. And is that in fact the law? He's saying I won't be able to do anything once the sentence is pronounced. Is that in fact the law? That is the law, but that is not the only portion of this that is relevant. The relevant portion additionally is that he did communicate with the defendant's family in an ex-parte manner without informing the attorneys. Okay. Well, I spot you that. Let's assume that he in fact did that. And let's say he did that and in fact gave your client favorable information. And then the question would be, yes, he did something wrong in having an ex-parte communication, but could you discern from that bias against your client? If in fact, let's assume for the moment that the interpretation is all favorable, I'm telling you, I want to give you the best insight on what you should do for sentencing that's coming up. Do this and you're likely to get a good result. That's the nature of the ex-parte communication. If that's it, where do you get from that that he should recuse because he did something that has bias against your client? Because without having calculated the sentencing guideline range, something that the return of the children or not is not considered as part of the sentencing guideline range. So it seems as though even without considering that portion of it, he had already determined a condition upon which Ms. Mosley's sentence would be calculated, would be determined. Okay. I'm through on this line of questioning for the moment, so you may proceed. Thank you, Aaron. The second issue I'd like to discuss is the sufficiency of the evidence presented at trial, and namely the Skype communications that were presented by the government. They merely constituted lines of argument that were contained in longer communication. Under the jury pattern instructions, Ms. Mosley had to actually convey a threat to kidnap when, in fact, Ms. Mosley was merely requesting things such as her property to be returned to her upon return to the country, the car that was parked at Mr. Brian Mosley's house. Additionally, when the government discusses or acknowledges Skype communications between the two parties in Bogdano-Mosley says, yes, you can. You can also transfer child support to my PayPal. The government seems to rely on this as extortionary statements. However, even Mr. Mosley's divorce decree from Sedgwick County ordered him to pay $727 per month to Bogdano-Mosley for the provisions of SM, their older daughter. So this is not considered an extortionary statement. It is merely an argument or idle talk. Ms. Mosley gave permission for Mr. Brian Mosley to have communications with the kids and also requested, additionally, that he transfer the child support that had previously been ordered. Ms. Fearman, could I skip for a second to make sure I understood your position on the indictment? When I heard you in your introductory remarks, you referred to the specificity of the indictment and that that was the gravamen of your concern about the indictment. In the brief, there was some reference to whether the indictment had a true threat in it. Are you actually making such an argument that the indictment did not plead an offense in that sense? Those are two distinct things. Yes, Your Honor. I acknowledge that the indictment lists the elements of the offense in that it states, transmitted in interstate commerce, containing a threat to kidnap, that is to continue to retain the child outside of the United States. That is the quote I'm reading from count four of the indictment. However, what I'm stating is that the indictment, in my argument against the indictment, I'm stating that it does not specify which communications are supposedly threats to that. For example, it references in count two and count three the exact same counts that I was just reading the quotes from regarding the child support. Those are not true threats to retain the child outside of the country. Okay, so let me be clear now. What you're saying is that the indictment did not include the language that was the substance of the count. In other words, because the first count, I mean the first count that's at issue here, I think count two had actually, there were like three statements that took place within that time period of count two, right? Yes, Your Honor. The ones that I read were just from count two. And so, I'm sorry, I didn't understand your response. What? The quotes from the Skype that I just read were from count two, yes. We're not listening to an indictment, but I'm reading the quotes that are referencing that child. So, is your complaint then that in count two, which you have a period going from August 27th to August 30th, that the count did not specify the specific statements that were at issue? Yes, Your Honor. Okay, so you're not making an argument that the statements themselves, because the statements aren't in the indictment. So, you're not making an argument that somehow or other, legally, the statements aren't a true threat. That's a different argument. That is my argument, as far as the evidence is insufficient to support an indictment on counts two and three. Okay, but that's not your complaint in the indictment? Correct. Okay. I see that. I would like to reserve the rest of my time for... Yes, sorry, Your Honor. One quick question, which is, did the defendant have the written Skypes? At what point? Was it an open file? As her counsel, we received the discovery when we joined the case, prior to trial. Thank you very much. Jen Seymour, did you have a question? Most of them got answered, thanks. Well, we may run a little long, but I need to explore with you, Ms. Behrman, before you sit down, this question of restitution. Specifically, what I want to ask now is, what is your understanding of what statute the court used in imposing restitution? I mean, it could be the Victim and Witness Protection Act, which is what the pre-Senate reporter came to the view that it was, after further reflection, or it could be the Mandatory Victim Restitution Act. You didn't object to the pre-Senate reporter's determination that it was a Victim and Witness Protection Act, so which one is it? Your Honor, our argument is that... I'm sorry? Our argument is that they were relying on 18 U.S.C. 3663, where the cost of investigation victim voluntarily undertakes and not properly included in the restitution award. Okay, so 3663 being the Victim and Witness Protection Act, and not 3663A, not that one? Your Honor, we also include 366A, subsection B-4, which discusses the victim loss of income necessary for child care, transportation, and other expenses incurred in the participation of the investigation. Okay, there are two B-4s. There's a B-4 in both 3663A, and there's a B-4 in 3663. I understand you're talking about the latter, right? Correct. Okay, all right, that's enough for now. Thank you very much. Mr. Hart, are you ready to proceed? I am. May it please the Court... I'm sorry, go ahead. I was going to say, please proceed. May it please the Court, the United States Appears by and through Jason Hart, Assisting United States Attorney for the District of Kansas. I'm going to pick up not where the defendant left off, but where the defendant appellant started regarding the recusal motion. I think the Court here keyed in on the fact that Judge Milgren did not promise a sentence in his communication. I think it's also important to note from the record that this subject of letter writing is a thing that the defendant had engaged in repeatedly. The subject matter that Judge Milgren communicates, that being that bringing the children would need to occur at a certain point, it's important to understand that the defendant repeatedly raised from the outset of the case, as far back as her initial appearance and request to be released from detention. And so when the Court is advising Ms. Filippuk, who had been identified as representative of the defendant, had been engaged in requesting medical records and so forth, even while the defendant was in compulsive evaluation status, when this is being inquired of and the Court is saying it needs to happen before sentencing imposed, that is a procedural clarification. When the Court says it needs to happen before I pronounce sentence, that part is procedural. It's not simply that, hey, sentencing is on this date at this time and I've received this letter. That's not the only components that are procedural. When he says I cannot do a thing later, in the context of this case, that is advising Ms. Filippuk of procedural matters. And I would note that the attorneys had been told several times that sentencing would go differently. As the trial attorney, I had communicated that with the attorneys, and I know that the attorneys understood that and communicated that to the Court in some of their representations about their need for delays, is that they're working on getting the kids back because that would help with sentencing. And I think the Court is correct to note that there's no prejudice that the defendant experiences by virtue of the communication. And even if the Court doesn't go down the road of invited error, I think the Court can resolve it with the fact that there is no prejudice suffered by the defendant. With regard to the sufficiency of the evidence arguments, we outline the threats as they were communicated in our briefing, specifically it's Exhibit 35A and Exhibit 35B for Counts 2 and 3, respectively. The Court's questions to the defense, to the appellant, about whether this is a specificity argument or a true threat argument, I remain unclear as to exactly what the argument that the true threat argument is both waived and forfeited for the reasons that we outlined in our brief. It was not raised to the District Court in the motion to dismiss the indictment. It has only been raised for the first time on appeal. At the time of the motion and at the time of hearing, defense counsel was clear that this related to specificity. And as it relates to that defense, whether they had any questions about what the nature of the charges were, defense counsel unequivocally stated we've been provided discovery. We know, but we also are prepared to proceed and that there's no point in doing a bill of particulars because we've been provided all this discovery and trial counsel, Mr. Hart, has been very forthcoming with directing us to the salient parts. And so the Court resolves that question, that motion with a denial because they've acknowledged that the defendant is actually on notice, has been provided fair notice, but is actually on notice of the charges. Mr. Hart? Yes. Judge Phillips, you say salient portions. Is any of the discussion about you can't Skype with the children, does it matter for either of these charges? Because that's not a kidnap. Can you speak on the Skype system, isn't it? Well, can I speak with the kids? I think the way that we initially charged this is that it is denial of access, which relates to custody and visitation. So when we talk about custody, it's not simply the physical, I have possession of the children. It is also the communication side of things, the visitation. Now, I think the jury resolved it based upon the arguments and closing arguments at trial. The jury resolved it on the issue of, well, do those threats communicate a intent to withhold the children from physical contact? And both of the charges that the jury determined, or convicted the defendant on, communicated that physical component of, I'm not giving the kids to you in Poland, or I'm not returning to the U.S. to a place, a physical place, until X, Y, or Z happens. And those things were either the provision of property or money. All right. I understand your point on that. Let me ask you a very fundamental question that is troubling, which is Section 1201, which is the kidnapping statute, and Section 875, interstate communications, were passed the same day, in 1948, and they continued together in the books by themselves for 40 plus years until 1204 comes along in 1993. And I'm struggling to see how 1204 gets into Section 875. In other words, whether Count 2 and 3 even state a crime. And in that regard, Section 875 talks about a threat to kidnap, which sounds like something in the future. And kidnap should be interpreted under that statute the way that statute is written, should it not. And at least classic kidnapping, if you look in Black's Law Dictionary or 1201, is not one parent taking a child who is not under duress or compulsion or anything else. It's a child with a parent. Tell me why 1204 fits within Section 875. In part because Congress, when they enacted 1204, identified it as kidnapping. It's a form of kidnapping. Well, wait a minute there, because I understand that the title says interstate parental kidnapping, but the word kidnap, unlike 1201, the word kidnap, and unlike 875, the word kidnap is not used in 1204. What's the significance of that? Your Honor, I don't know that I would attribute any significance to it because what 875 is getting at is the threat to take someone's kids. And in this particular context, and it's not the threat to take someone's because if they had intended it to be specifically a 1201 kidnapping, I think our case law and our statutory construction canons would indicate that they would have needed to say that. Well, they did say that for 45 years. Those two went together. They were dance partners, 875 and 1201. Then along comes 1204, and the question is, does that crowd in on 875? And 1201 takes pains to say kidnapping is not parental. If it's a parent with a child, that is not a kidnap under 1201. It says so. And let me, I'm sorry, I'm pulling up the statute and getting it in my hand. I think the identification of the statute as kidnapping, 1204 as kidnapping, um, is salient because it goes back to the wild. I understand. But when we talk about kidnapping generally, and I think what the court's question is, is, well, what did Congress intend for this? When, when 1204 is enacted, my question is text. I don't want to get past Texas as far as intention goes. Okay. Well, in terms of the text, uh, kidnapping as it is in 875 does not reference specifically 1201. It doesn't say as, as our, as identified, it doesn't enumerate 1201, um, in the, uh, 875 statute. It references kidnap in theory that could be at the state level, uh, a state kidnapping, a, uh, or federal kidnapping. But when Congress then does kidnapping under 1201, which is its title, um, it uses kidnap, but it also talks about unlawfully seizing, confining and vagals decoys of ducks and carries away. Kidnapping appears as a word in that long list of things, but it's talking about unlawful carrying away a person. Now the title kidnapping for that statute, it's in the title that it says this particular statute doesn't involve parental kidnapping, but within that same area, that same chapter, chapter 55, it identifies this type of conduct is parental kidnapping. And so what we have is we have Congress identifying and placing with, with, um, the kidnapping statute, which includes all of that language of unlawfully seizing and so forth, um, that this is a type of kidnapping. This is a, this is a different type of kidnapping. And so when we look at 875 of what it's trying to get at is kidnapping generally, it's not saying that parental kidnapping is excluded. Um, and where Congress has actually say, and it just does a threat to kidnap, which suggests to me that you're saying, unless you do X, I'm going to kidnap. Does it read that way to you too? Um, let me pull that one up. Okay. Subsection A of 875 says kidnap. And then B says threat to kidnap. At the point that those conversations were going on, the children were already in Russia and there was no sign that mom was bringing them back to the United States. Right. Correct. And threat to detain. They're already detained. They're in Russia. They're not coming home. Well, in the kidnapping, there's also in the, in the 1201, it's, it's not simply the taking away. It is also the holding a person. Well, 1201 is out of play because you say it's in the title, but it's actually in the text where it says, except in the case of the minor by the parent thereof. In other words, 1201 doesn't even apply to this. Well, I'm, I'm sorry, your honor. Keep going. Oh, please. I'm sorry. Okay. With regard to the kidnapping, when we look at what is the sort of generic definition, and I hesitate strongly to engage in any sort of categorical approach on that. Well, when we talk about it, it would say compulsion against your will. Um, with regard to the kidnapping, there's also the holding side of it is not simply the carrying and taking away, but it would also be the holding, um, and retaining or detaining of that person over time. It's not simply the, you say it's continuing crime. And I agree with that, but are you saying that you can make it a new count for every day that the kidnapped person or the internet or the parentally detained person has the child every single day as a separate note? No, I would, I would vote for kidnapping and international parental kidnapping. It is a extortionate threat. Those then are as part of the continuing offense, those would be, uh, threat specific. So when a person says, Hey, I need, um, uh, um, I'm going to do this on this day, or I'm going to do this on this other, on this other occasion, those would be two separate instances, though they would be part and related to the continuing underlying offense. Um, now go ahead, just, uh, just fill it out. I don't mean to cut you off. Are you, no, no, please. I've had more than my share of time. Thank you. If I, if I may just reference, uh, the restitution issue, uh, what's your understanding? I have at least two questions. What's your understanding, what provision the court was using and imposing restitution? Was it the three six six three or the mandatory victim witness restitution act? Uh, your honor, the way that, as I briefed it is three, six, six, three. And that's my understanding of how the court was proceeding. Okay. Now focusing on the attorney fees issue, did you at any time ask Mr. Mobley to incur legal fees in connection with the prosecution of this matter? Did I affirmatively ask him to incur legal fees? That's correct. And all right. And what, and how would the recovery of the children be an objective of the criminal prosecution in this mobile? Um, well, I think, I think in terms of the repatriation of the children, uh, we were, we were actively involved with the department of state trying to secure and identify and locate the kids as to the court's earlier question of whether we specifically asked Mr. Mobley to incur attorney's fees. We didn't ask him to, but we knew that he was going to, that he was going to try to go over there to get the kids. Okay. He knew he was going to, but my point is what in what a criminal prosecution, a prosecution to secure a conviction of a defendant. Well, how does the children, I mean, it may have been a nice thing for you to try to get the kids. Your honor, the, the, in this particular instance, the children are also victims. Um, and so it's not simply Mr. Mobley who is a victim, but also the child and the unborn child would be in mind you victims, uh, of the defendant's crime. And so making them whole, which is to reintegrate the family is I think part and parcel of, of any criminal prosecution restitution then is the financial side of that, which is, uh, to, uh, recompense or to gain the, the economic remuneration back for costs incurred as part of participating in the investigation or participating in the prosecution. And in this particular case, as we outlined in our brief, those costs are, are considerably different than those that were identified in Lagos. This is much more like Cummings because they are a part, they're incurred during the prosecution and, uh, with an aim oriented towards bringing those kids back. Um, unless you have additional questions, I believe I'm out of time. I do, but I'll leave it alone. Okay. Uh, judges, do you have any questions for counsel? All right. Thank you. Thank you. Ms. Spearman, you have 36 seconds of rebuttal time remaining. Could you, could you add 30 seconds to her time, please? Give me just a moment and I will get that set for you. Okay. Ms. Spearman, are you ready to proceed? I am. In regards to the restitution argument made by the government, Ms. Mobley would point out that those expenses are ones that were incurred as what essentially amounts to, um, an exaggerated custody battle. Ms. Mobley has what did try for several years to get the younger daughter, the one who was born in Russia, a United States passport, something that she repeatedly requested Mr. Brian Mobley to assist with, and they were unable to get the paperwork worked out so that she could receive a U.S. passport so she could come to the States. The fact that this is now coming up after a criminal prosecution, trying to get the girls is not part of something that was incurred as part of this criminal prosecution or investigation. It was part of the custody battle and divorce proceedings between the two parties. Let me, let me focus on the indictment for a second and the line of argument, at least as I understood it from Judge Phillips regarding 875B. I don't recall seeing that in your brief. Is that in your brief? Do you want to have my brief right in front of me? Let me pull it up to double check. The argument regarding the sufficiency of the indictment is in our brief. I'm not saying that. I'm saying this specific argument that 875B, that there's a problem because it refers to kidnapping and kidnapping could be kidnapping under 1201 and kidnapping under 1201 could not relate to a parent of a minor. That argument is not in your brief as far as I could tell. Are you going to disagree? I apologize. I misunderstood your question. That part of the argument is not in our brief. All right. Was that the final bell? Yes, it was. All right. Any questions? Any further questions from the bench? None for me. Thank you. None for me either. All right. Thank you, counsel. Case is submitted.